IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BROCK INDUSTRIAL SERVICES, LLC, )
)
       Plaintiff, )
)
vs. ) Case No. 16-CV-780-NJR-DGW
)
LABORERS INTERNATIONAL UNION )
OF NORTH AMERICA, )
CONSTRUCTION & GENERAL )
LABORERS LOCAL #100, )
)
       Defendant. )

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court are the following four motions: a Motion to Dismiss for Failure to State a Claim (Doc. 15) filed by Laborers International Union of North America, Construction & General Laborers Local #100 ("Laborers"); a Motion to Vacate (Doc. 18) filed by Brock Industrial Services, LLC ("Brock"); a Motion to Dismiss the Motion to Vacate (Doc. 26) filed by Laborers; and a Motion to Enforce (Doc. 30) filed by Laborers. For the reasons set forth below, the Court denies all four motions.

## FACTUAL & PROCEDURAL BACKGROUND

This action arises out of a distribution of labor assignment dispute between Brock and Laborers. Specifically, Brock seeks to have the April 14, 2016 decision by the National Maintenance Agreement Policy Committee, Inc. ("NMAPC") Grievance Review Subcommittee ("GRS") vacated by the Court. The Court will refer to the April 14, 2016 decision from this point forward as "the GRS decision."

The facts leading to the GRS decision are largely uncontested. Brock and Laborers agreed to the National Maintenance Agreement collective bargaining agreement ("NMA") with an effective date of January 7, 2016. (Doc. 1-3, p. 11). The NMA provides in pertinent part that "[e]xcept for jurisdictional disputes . . . all disputes and grievances arising out of work performed under this Agreement . . . shall be resolved . . . " through the procedure outlined in Article VI—Grievances of the NMA (hereafter referred to as "the procedure for disputes and grievances") (Doc. 1-3, p. 15). This procedure for disputes and grievances requires the parties to submit any grievance that they cannot resolve to the NMACP for a decision. (Doc. 1-3, p. 15). For work jurisdictional disputes, a different procedure under the NMA applies, beginning at Article I, Section 6 (hereafter referred to as "the procedure for jurisdictional disputes") (Doc. 1-3, p. 12-13).[1]

On January 8, 2016, Brock notified Laborers that scaffolding work, which was to be performed at the Afton Chemical Plant, would be assigned to the International Brotherhood of Carpenters ("Carpenters") (Doc. 18-1). On January 11, 2016, Laborers notified the NMAPC via letter that Brock violated the NMA when it wrongfully terminated Laborers and subsequently awarded the scaffolding work to Carpenters on January 8, 2016 (Doc. 1-3, p. 35). On January 21, 2016, Laborers also notified Carpenters that there was a work jurisdiction dispute between their respective organizations over the scaffolding work (Doc. 1-3, p. 37).

---

[1] A work jurisdiction dispute is "a dispute between two or more groups of employees over which is entitled to do certain work for an employer." *Hutter Const. Co. v. Int'l Union of Operating Eng'rs, Local 139, AFL-CIO*, 862 F.2d 641, 644 (7th Cir. 1988). There are three different areas of consideration in this case that use the term "jurisdiction" or some variation thereof. To avoid confusion, when the Court uses the terms "jurisdiction" or "work jurisdiction," it is referring to the assignment of work to either Laborers or Carpenters. When the Court mentions its own subject matter jurisdiction over the case, it will use the specific term "subject matter jurisdiction." When the Court refers to the jurisdiction of the NMAPC generally and the GRS specifically over the claimed grievance, it will use the term "arbitration authority."

On January 25, 2016, in accordance with the procedure for disputes and grievances (Article VI—Grievances) in the NMA, Laborers filed a grievance with the NMAPC over the January 8, 2016 work assignment, alleging that a wrongful termination of Laborers' members had occurred and seeking the reinstatement of those members (Doc. 1-3, p. 39). On March 3, 2016, Brock responded to the grievance, asserting that the dispute relating to the January 8, 2016 work assignment was a work jurisdiction dispute and was therefore beyond the scope of the NMAPC's arbitration authority. Brock further requested that the grievance be dismissed and denied (Doc. 1-3, p. 54).

The GRS denied Brock's request and, on April 14, 2016, found that "a violation of Article I, Section 5 of the National Maintenance Agreement occurred when [Brock] made a change of assignment and therefore the grievance was sustained." (Doc. 1-3, p. 3). Specifically, this section of the NMA cited by the GRS reads as follows: "During the existence of the Agreement, there shall be no strikes, lockouts, work stoppages, or picketing arising out of any jurisdictional dispute. Work will continue as originally assigned, pending resolution of the dispute." (Doc. 1-3, p. 12). The GRS decision then directed the parties to "avail themselves of the NMACP Work Assignment Dispute Process contained within Article I commencing with Section 6" (the procedure for jurisdictional disputes) (Doc. 1-3, p. 3).

Brock and Laborers disagree over whether Brock's January 8, 2016 assignment of scaffolding work to Carpenters involves a work jurisdiction dispute or a wrongful termination (or lockout) in addition to a work jurisdiction dispute. Related to this issue, Brock and Laborers disagree over whether Brock previously assigned scaffolding work

to Laborers prior to the January 8, 2016 assignment of scaffolding work to Carpenters, and thus effectively terminated Laborers from the work by reassigning it to Carpenters.

On July 12, 2016, Brock filed suit against Laborers pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to have the GRS decision vacated on the basis that it is outside the scope of the GRS's arbitration authority (Doc. 1).[2] Since that time, there have been four motions filed with the Court, one by Brock and three by Laborers, all of which are interrelated. Specifically, on August 2, 2016, Laborers filed a Motion to Dismiss (Doc. 15), seeking dismissal of the Complaint for failure to state a claim. On September 19, 2016, Brock filed a Motion to Vacate (Doc. 18), seeking to have the GRS decision vacated. On September 30, 2016, Laborers filed a Motion to Dismiss the Motion to Vacate (Doc. 26), seeking to have Brock's Motion to Vacate dismissed on timeliness grounds, as well as being redundant with Brock's Complaint. Lastly, on November 28, 2016, Laborers filed a Motion to Enforce (Doc. 30), seeking to have the GRS decision enforced.

## ANALYSIS

### I.     Motion to Dismiss the Motion to Vacate (Doc. 26)

As a preliminary matter, the Court will address the Motion to Dismiss the Motion to Vacate (Doc. 26) filed by Laborers. Laborers argues that Brock's Motion to Vacate (Doc. 18) is untimely under the statute of limitations pursuant to the Federal Arbitration Act (FAA), but gives no explanation as to how or why the FAA should control the statute of limitations here.

---

[2] The LMRA "provides for federal subject-matter jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization' (such as collective bargaining agreements), 'without respect to the amount in controversy or without regard to the citizenship of the parties.'" *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) (quoting 29 U.S.C. § 185(a)).

Moreover, Brock does not raise an FAA claim in the Complaint, but brings its claims solely pursuant to the Labor Management Relations Act ("LMRA"). Thus, the Court finds Laborers' timeliness argument to be largely undeveloped. The Court also does not find it appropriate to strike the Motion to Vacate under Federal Rule of Civil Procedure 12(f)(2). Accordingly, the Court denies the Motion to Dismiss the Motion to Vacate (Doc. 26) filed by Laborers.[3]

## II. Motion to Dismiss for Failure to State a Claim (Doc. 15) filed by Laborers

### a. Applicable Law

To withstand a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint does not need to include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id.* at 555. Under this plausibility standard, a court must "accept the well-pleaded facts in the complaint as true, but [it] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). A court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

There are two broad categories of general consideration over an arbitration award—whether the dispute is arbitrable and whether the arbitration award was correct

---

[3] Because Laborers' motion was filed in response to Brock's Motion to Vacate, and because the motion practice that has taken place in this case is somewhat confusing, the Court will not deem the merits of Brock's Motion to Vacate to be admitted by Laborers, especially when the merits of Brock's Motion to Vacate have been contested by Laborers' other filings.

on the merits. The scope of judicial review of an arbitration award is extremely narrow. *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 183 (7th Cir. 1985). A court is only empowered to determine whether the dispute is arbitratable. "[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964). Further, a court "may review and set aside an award if the grievance is not arbitrable." *Cannon v. Consol. Freightways Corp.*, 524 F.2d 290, 295 (7th Cir. 1975). When reviewing an arbitration award, a court is confined to an inquiry of whether the award is based on the collective bargaining agreement because "the arbitrator's award is enforceable so long as it draws its essence from the collective bargaining agreement, even if the court thinks the arbitrator misconstrued the contract." *Ethyl Corp.*, 768 F.2d at 184 (internal quotation omitted). The underlying merits of the arbitration award should not be examined because "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steel Workers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

B. Discussion

In the Motion to Dismiss for Failure to State a Claim (Doc. 15), Laborers argues that Brock's Complaint "fails to state a cause of action in which relief can be granted." (Doc. 15, p. 1). In support, Laborers alleges that "[v]iolations under [Section] 301 occur when the union has breached the collective bargaining agreement" and "[n]o violation occurred here as the Parties expressly agreed to arbitrate the subject matter of the

grievance in the Collective Bargaining Agreement." (Doc. 15, ¶ 9-10). Laborers views the labor dispute as a two-step wrongful termination (or lockout) arising out of a work jurisdiction dispute premised on Laborers having been originally assigned the scaffolding work.

Brock alleges in its Complaint that the labor dispute decided by GRS was solely a work jurisdiction dispute (Doc. 1, ¶ 13). Further, Brock alleges that a work jurisdiction dispute is beyond the NMAPC's arbitration authority. In a document attached to the Complaint, which appears to be correspondence from Brock to the NMAPC in response to Laborers' grievance filing, Brock states that "Laborers have never been trained or responsible for erecting, modifying, or dismantling scaffolding." (Doc. 1-3, p. 55). Although not contained within the four corners of the Complaint, it is proper for the Court to consider this and all other attachments to the Complaint because "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, *in particular, documents incorporated into the complaint by reference*, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) (emphasis added). The various documents comprising Doc. 1-3 are expressly incorporated into the Complaint by reference to each individual document (*See* Doc. 1 ¶ 1-2, and ¶ 19). This includes the NMA in force at the time the events occurred, as well as the GRS decision (Doc. 1-3, ¶ 1-2).

      i. **The Procedure for Jurisdictional Disputes (Article I, Section 6) and the Procedure for Disputes and Grievances (Article VI—Grievances) Are Both Arbitration**

The Court must first determine if the procedure for jurisdictional disputes (Article I, Section 6) and the procedure for grievances (Article VI—Grievances), which is the procedure by which the GRS came to issuing its decision, are arbitration. There can be no doubt that the procedure for jurisdictional disputes is arbitration, as it explicitly provides for the parties involved to "refer the matter to arbitration" if they are unable to resolve the dispute among themselves (Doc. 1-3, p. 12 ¶ 7).

Although not explicitly termed arbitration, the procedure for disputes and grievances (Article VI—Grievances) is also arbitration. The actual language within the NMA describes the grievance as being "submitted to the NMAPC for a decision to become effective immediately . . . ." (Doc. 1-3, p. 15). If the NMAPC is unable to reach a decision, then the matter is submitted to the American Arbitration Association for a binding decision (Doc. 1-3, p. 15).

Whether a dispute resolution procedure is arbitration "does not depend on the nomenclature used in the agreement, rather, the question is how closely the specified procedure resembles classic arbitration." *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004) (internal citation omitted). The procedures of classic arbitration include "(i) an independent adjudicator, (ii) who applies substantive legal standards (*i.e.* the parties' agreement and background contract law), (iii) considers evidence and argument (however formally or informally) from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties . . . ." *Advanced Bodycare Solutions, LLC v. Thione Int'l., Inc.*, 524 F.3d 1235, 1239 (11th Cir. 2008).

The procedure for disputes and grievances (Article VI—Grievances) has all four of the identified procedures of classic arbitration. Although not termed as such, the NMAPC functions as an impartial arbitrator in the grievance process. The NMAPC's GRS found a violation based on the parties agreement (Doc. 1-3, p. 3). Both Brock and Laborers submitted evidence and arguments for resolving the dispute that was considered by the GRS (Doc. 1-3, p. 39-47, 54-56). The GRS decision purported to resolve the dispute and then directed the parties on how to proceed toward resolving the remaining issues over which it did not have arbitration authority (Doc. 1-3, p. 3). Thus, the Court finds that both processes are arbitration.

        ii.      **Brock's Challenge to the GRS Award Involves Substantive Arbitrability, Not Procedural Arbitrability**

There are two kinds of challenges to arbitrability—substantive arbitrability and procedural arbitrability. A court may decide questions of substantive arbitrability, but an arbitrator must decide questions of procedural arbitrability. *See Piggly Wiggly Midwest LLC v. United Food and Commercial Workers Local 1473*, No. 11-cv-00604, 2011 WL 5024575, at *1 (E.D. Wisc. Oct. 20, 2011). Substantive arbitrability questions revolve around "whether a dispute involves a subject matter that the parties have contractually agreed to submit to arbitration . . . ." *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen, Sch., Sightseeing, Charter Bus Drivers, Gen. Promotional Employees of Affiliated Indus., Local Union No. 744 v. Metro. Distributors, Inc.*, 763 F.2d 300, 303 (7th Cir. 1985). On the other hand, "procedural arbitrability refers to whether particular grievance procedures apply to a dispute, whether the procedures have been followed or excused, and whether the unexcused

failure to follow such procedures avoids a party's duty to arbitrate." *Id*. After it is determined "that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964).

In order for the Court to determine whether Brock's challenge to the GRS decision involves substantive or procedural arbitrability, the Court must determine whether the NMA is one general agreement to arbitrate with different procedural parts for work jurisdiction disputes and other disputes *or* whether the NMA has within it two different arbitration agreements.

In the NMA, the parties agreed to two different procedures for arbitration of disputes—one procedure for jurisdictional disputes and a different procedure for all other disputes and grievances arising under the agreement. (Doc. 1-3, p. 12, 15). The Court views these separate procedures as two different arbitration agreements contained within the same NMA, rather than one general arbitration agreement with different procedural parts. The arbitration agreements are different, there are different remedies available under each procedure, and they provide for different arbitrators to resolve the different types of disputes.

As an example, under the procedure for jurisdictional disputes, no "back pay or any damages for a misassignment of work" can be awarded (Doc. 1-3, p. 13). The procedure for disputes and grievances, however, contains no such limitation (*see* Doc. 1-3, p. 15-16). As another example, under the procedure for jurisdictional disputes,

the dispute is to be decided by "the Umpire." (Doc. 1-3, p. 12). The procedure for disputes and grievances, however, provides that the dispute is referred to the NMAPC for resolution and then, if the NMAPC is unable to make a decision, to the American Arbitration Association for resolution (Doc. 1-3, p. 15). Thus, the two procedures are in fact two different arbitration agreements within the same NMA. Because it is the subject matter of the dispute that governs whether the parties agreed to a certain type of arbitration (or to arbitrate in a certain way), the Court views Brock's challenge to the GRS decision as being substantive in nature. This places Brock's challenge within the narrow area of consideration for judicial review of arbitration awards.

### iii. Brock has Stated a Claim Pursuant to Rule 12(b)(6)

Assuming without deciding that Brock's factual assertions characterizing the dispute as being work jurisdictional in nature and that Laborers' members were never trained or responsible for the scaffolding are true, those assertions plausibly suggest that the procedure followed by Laborers to have the dispute arbitrated by the GRS was improper. This would mean that, by following the procedure for disputes and grievances, Laborers breached the NMA. As stated previously, according to the NMA, jurisdictional disputes are resolved through the procedure for jurisdictional disputes (Article I, Section 6), while all other disputes follow the procedure for disputes and grievances (Article VI—Grievances) (Doc. 1-3, p. 12, 15). Thus, Brock has stated a plausible claim that the GRS decision should be vacated because it was outside the essence of the party's agreement. The NMAPC would not have had arbitration authority

to decide the dispute presented by the Laborers' grievance because work jurisdiction disputes are part of a separate arbitration agreement contained within the same NMA.

**III.  Motion to Vacate (Doc. 18) and Motion to Enforce (Doc. 30)**

    **a.  Applicable Law**

Section 301 of the LMRA authorizes the district courts to enforce or vacate an arbitration award entered pursuant to a collective bargaining agreement. 29 U.S.C. § 185(a); *see generally United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 593 (1960). Although neither party explicitly moves for summary judgment in order to vacate or enforce the GRS decision, the Court finds it appropriate to utilize the summary judgment standard here. *See In re Frascella Enterprises, Inc.*, 349 B.R. 421, 426-27 (Bankr. E.D. Pa. 2006) ("A motion to enforce an arbitration agreement is typically reviewed under the standard for summary judgment found in Federal Rule of Civil Procedure 56(c)."); *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980); *see, e.g. Parkland Environmental Group, Inc. v. Laborers' Intern. Union of North America, Laborers' Local #477*, No. 06-3238, 2009 WL 2051207, at *1 (C.D. Ill. Jul. 8, 2009) (cross motions for summary judgment filed seeking confirmation/vacation of arbitration award under the LMRA). Thus, disposition will be appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)).

The allowable inquiry by a court into the validity of an arbitration award is very narrow. *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 183 (7th Cir. 1985). A court may not review the merits, but may ask only whether the grievance is

governed by the contract and whether the parties agreed to arbitrate the dispute. "[C]ourts in such cases must give the arbitrator his customary deference; the arbitrator's award is enforceable so long as it 'draws its essence from the collective bargaining agreement,' even if the court thinks the arbitrator misconstrued the contract." *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 184 (7th Cir. 1985) (quoting *United Steel Workers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).

The issues presented by the parties require the Court to decide under which arbitration agreement/procedure the dispute arbitrable. This determination of arbitrability, however, also will have the practical effect of determining the merits of the underlying dispute and the arbitration award. When the question of arbitrability and the underlying merits of the dispute become the same question, the Seventh Circuit has stated that "the rule that courts must decide arbitrators' jurisdiction takes precedence over the rule that courts are not to decide the merits of the underlying dispute. If the court must, to decide the arbitrability issue, rule on the merits, so be it." *Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993); *see Stevens Const. Corp. v. Chicago Regional Council of Carpenters*, 464 F. 3d 682 (7th Cir. 2006).

**b. Discussion**

The fundamental question that must be resolved in order to determine whether the dispute was within the GRS's arbitration authority is whether the decision by Brock to assign work to Carpenters instead of Laborers was a two-part wrongful termination (or lockout) arising out of a work jurisdiction dispute as Laborers asserts or whether it was solely a work jurisdiction dispute as Brock asserts. If it was a two-part wrongful

termination (or lockout) arising out of a work jurisdiction dispute as Laborers asserts, then it appears it would have been correct for Laborers to follow the procedure for disputes and grievances (Article VI—Grievances) and for the GRS to arbitrate the dispute. If, however, it was solely a work jurisdiction dispute as Brock suggests, then it appears it would be improper for Laborers to follow the procedure for disputes and grievances (Article VI—Grievances) and for the GRS to arbitrate the dispute. Instead, the procedure for jurisdictional disputes (Article I, section 6) should have been followed. This would then indicate that the GRS lacked arbitration authority under the NMA.

The NMA became effective on January 7, 2016 (Doc. 1-3, p. 28). On January 8, 2016, Brock notified Laborers that "as of January 8, 2016 Brock Industrial Services will be assigning all scaffold related work to the Carpenters . . ." (Doc. 30-4). Thus, for purposes of determining whether it is a one-part or two-part dispute, the only relevant date for the status of the assignment of work to Laborers is January 7, 2016. Any work assigned to or performed by Laborers' members before January 7, 2016 would have been assigned or performed before the NMA became effective and therefore would be outside the scope of the controlling NMA.

The existence of a work jurisdiction dispute is agreed to by Brock, Laborers, and the GRS (Doc. 1, ¶ 13) (Doc. 30-7) (Doc. 1-3, p. 3). What is disputed is whether there was a wrongful termination (or lockout) as to Laborers. Bearing directly on this question is whether Laborers' members were assigned the scaffolding work prior to receiving notice from Brock that such work would be assigned to Carpenters.

Laborers asserts that, "[p]rior to January 8, 2016, Brock employed the laborers to erect scaffolding at the Afton Chemical Co. The laborers worked alongside carpenters from the International Brotherhood of Carpenters" (Doc. 30, ¶ 14). As evidence of this assertion, Laborers attaches a January 8, 2016 letter from Brock to Bobby Green, the Business Manager of Laborers' Local 100, which states that "as of January 8, 2016 Brock Industrial Services will be assigning all scaffold related work to the Carpenters . . . ." (Doc. 30-4). Further, the grievance filed with the NMAPC has several hand-written notes from multiple Laborers' members stating in different ways that Brock hired them and subsequently terminated them from scaffolding work (Doc. 1-3, p. 44-47).

Brock denies that the scaffolding work was assigned to Laborers in the first place and asserts that the "dispute was plainly the direct result of a work assignment by [Brock] to the Carpenters *instead* of to the Laborers." (Doc. 18, p. 18) (emphasis added). Further, Brock "denies as untrue the allegation and/or inference that its January 8, 2016 letter is evidence it employed laborers to erect scaffolding at the Afton Chemical Co. prior to January 8, 2016 or that laborers worked alongside carpenters from the International Brotherhood of Carpenters" (Doc. 31, ¶ 14). Finally, in its response to the grievance filed by Laborers with the NMPAC, Brock asserts that "Laborers have never been trained or responsible for erecting, modifying, or dismantling scaffolding." (Doc. 1-3, p. 55).[4]

---

[4] The Court notes a seemingly contrary statement made by Brock in its response to the Motion to Dismiss for Failure to State a Claim, that the assignment of work to Carpenters "necessarily meant that any Laborers who had been doing the scaffold work would no longer be so engaged." (Doc. 17, p. 4). Brock in a later filing and using much the same language clarifies the statement as "necessarily meant that laborers who had been doing scaffold work at the Afton Chemical Plant, *if any*, would no longer be so engaged." (Doc. 31, p. 9) (emphasis added). Although this contrary statement, when viewed with the later similar statement adds confusion, it is not enough to assert that Brock has admitted that Laborers' members were

There are clearly disputed issues of fact which prevent the Court from determining whether the GRS decision should be enforced or vacated. If Brock is correct in its assertion that Laborers' members were never responsible for or assigned the scaffolding work, then there is presumably not a violation of Article I, Section 5 of the NMA, and the grievance relating to the January 8, 2016 work assignment would not be arbitrable under the procedure for disputes and grievances (Article VI—Grievances). Under these circumstances, the GRS would lack authority under the NMA to issue a decision pursuant to the procedure for disputes and grievances (Article VI—Grievances). If, however, Laborers is correct that its members were assigned the scaffolding work and then Brock wrongfully terminated them or initiated a lockout by reassigning the work to Carpenters, then presumably Brock would be in violation of Article 1, Section 5, because Brock was obligated under that same section to have the work "continue as originally assigned, pending resolution of the dispute." (Doc. 1-3, p. 12). Such a violation would be arbitrable under the procedure for disputes and grievances (Article VI—Grievances), and the GRS would have had arbitration authority under the NMA to issue the decision.

In order to determine whether the GRS decision should be enforced or vacated the Court must first determine whether scaffolding work was assigned to and then taken away from Laborers. Because this fact is disputed and is necessary to grant either

---

assigned the scaffolding work. Such a conclusion would be contrary to the bulk of Brock's assertions and filings.

motion, Brock's Motion to Vacate (Doc. 18) and Laborers' Motion to Enforce (Doc. 30) are both denied.[5]

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Dismiss (Doc. 15) filed by Laborers, **DENIES** the Motion to Vacate (Doc. 18) filed by Brock, **DENIES** the Motion to Dismiss the Motion to Vacate (Doc. 26), and **DENIES** the Motion to Enforce (Doc. 30) filed by Laborers. The case remains set for a Presumptive Bench Trial in August 2017.

**IT IS SO ORDERED.**

DATED: March 27, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[5] For clarity purposes on the docket, to the extent that Laborers wishes to file a counterclaim to Brock's Complaint, such counterclaim should be filed as a separate document and not buried within a Motion to Enforce Arbitration Agreement. As Laborers' Motion to Dismiss is denied in subsection II of this Order, Laborers may file its counterclaim when it files its answer to the Complaint, within the time period set forth in Federal Rule of Civil Procedure 12(a)(4)(A).